UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 24-54658 |
| | : | |
| Dark Rhiino Security, Inc., | : | Chapter 11 |
| | : | Subchapter V |
| Debtor. | : | Judge Cobb |

**FIRST AMENDED PLAN OF REORGANIZATION OF
DARK RHIINO SECURITY, INC.
DATED SEPTEMBER 30, 2025**

Dark Rhiino Security, Inc., the debtor and debtor in possession (the "Debtor"), submits this First Amended Plan of Reorganization (the "Plan") under section 1189 of title 11, United States Code (the "Bankruptcy Code" or the "Code"). The Debtor requests confirmation of the Plan under sections 1129 and 1191(a) of the Bankruptcy Code, and the Debtor requests confirmation of the Plan on a nonconsensual basis under section 1191(b) of the Code if necessary.

The purpose of this amended Plan is to include a provision for the Debtor to purchase certain shares of stock and to make other non-substantive revisions. This Plan does not adversely change the treatment of any claims or interests. If you previously submitted a ballot to accept or reject the Plan, you do not need to re-submit a ballot for this amended Plan.

**Your rights may be affected. Please read these papers carefully. You may wish to consult an attorney about your rights and your treatment under this Plan.**

**Background for Case Filed Under Subchapter V**

**A. Description and History of the Debtor's Business**

The Debtor is a managed security service provider ("MSSP") which provides managed cyber security services, technology and training to mid-size businesses such as law firms, energy providers and healthcare organizations. The Debtor also provides internet hosting services under the name Dark Rhino Hosting to approximately 130 customers with nearly 200,000 members (the "Hosted Accounts"). The Debtor is located in leased office space at 565 Metro Place South, Suite 300, Dublin, Ohio, 43017. The Debtor presently has 8 employees and several overseas independent contractors who work for the Debtor on a regular basis. The Debtor had approximately $1.6 million in gross revenues in 2023.

The Debtor was incorporated January 2017 as Dark Rhino Security, Inc. and changed its name to Dark Rhiino Security, Inc. in August 2023. The Debtor has four shareholders: Robert "Tyler" Smith ("Mr. Smith"), who is the current Chief Technology Officer and President of the Debtor, holds 125.7 shares; Manoj Tandon ("Mr. Tandon"), who is the

current Chief Executive Officer of the Debtor, holds 125.7 shares; Kevin Casey, the former Chief Executive Officer of the Debtor, holds 125.7 shares; and Anna Day, a former employee of the Debtor, holds 50.4 shares.

The Debtor has experienced financial hardship due to several causes beginning with the COVID-19 pandemic.  The Debtor grew to over $3 million in sales in 2019, but during the pandemic many of its customers shut down entirely, and in 2020 the Debtor's sales dropped to about $1.6 million and have remained at that level since then.  In addition, the Debtor's financial hardship is due in part to the mismanagement and misconduct of its former CEO.  The former CEO: misappropriated company funds for personal expenses, including his rent and various lifestyle expenses; incurred debt without shareholder consent; concealed a romantic relationship with an employee and paid that employee for work which was not performed; and concealed lawsuits against the Debtor from other shareholders.  In February 2024, the current shareholders and directors of the Debtor terminated the former CEO and hired GBQ Consulting to conduct an audit to determine the extent of the former CEO's misconduct.   The GBQ Consulting audit has not been completed due to the Debtor's cash flow difficulties.

The Debtor leases its office space at 565 Metro Place South, Suite 300, Dublin, Ohio (the "Office") from Dartpoints Operating Company, LLC, an unrelated third party, on a month-to-month basis.  The Debtor intends to assume the lease of the Office and continue operations there.

As of November 15, 2024 (the "Petition Date"), the Debtor's assets consisted of a small amount of furniture, fixtures, and office equipment (the "FF&E") valued at approximately $10,000.00; bank accounts at Heartland Bank and Huntington National Bank valued at approximately $18,000.00; and accounts receivable (the "A/R") valued at approximately $147,000.00.  The Debtor also claims an interest in the following assets with undetermined values: proprietary software; claims against former CEO for embezzlement and mismanagement; claims against shareholder/former employee for overpayment; and hosted website accounts.

The Debtor's primary secured lender is the U.S. Small Business Administration ("SBA"), which asserts a blanket lien on all the Debtor's assets, except deposit accounts.  The Debtor owes SBA approximately $524,000.00, so the Debtor believes SBA is significantly undersecured.  The following creditors (the "Deemed Unsecured Creditors") have asserted or may assert security interests on assets of the Debtor which the Debtor believes are junior to the security interest of the SBA, and therefore pursuant to 11 U.S.C. §506 the secured claims of each are valued at $0.00 and the creditors are treated as non-priority unsecured creditors under this Plan: CT Corporation System, as representative of an unnamed secured party and Anna Day.  The Debtor filed an adversary proceeding (Adv. No. 25-02006) against SBA and the Deemed Unsecured Creditors to determine the validity, priority and extent of their asserted liens.  After filing the adversary proceeding, the Debtor determined that the lien asserted by CT Corporation System was on behalf of Pearl Capital Business Funding, LLC, and this lien was terminated by the filing of a termination statement on April 21, 2025.  In the adversary proceeding, the Court determined that (a) the SBA holds

a secured claim against the Debtor in the amount of $157,845.03, (b) the SBA holds an unsecured claim in the amount of $366,196.49, and (c) Anna Day holds an unsecured claim only.

Finally, the Debtor believes there are no transfers which might be recoverable as preferences in this Case.  Within the 90 days prior to the Petition Date, the Debtor made transfers totaling more than $7,575.00 to eight different suppliers; however, the payments were either for ongoing services, health insurance or a legal retainer.  For the Liquidation Analysis attached as Exhibit A, the Debtor estimated that $0.00 would be recovered in a Chapter 7 liquidation.

The Debtor is able to propose a feasible plan of reorganization to this Court and its creditors.  The Debtor commenced this Chapter 11 proceeding to address its financial situation in a centralized forum.

## B.  Post-Petition Operations and Management

The Debtor continues to operate its business successfully after the filing of this Case.  No changes in management have occurred, and Mr. Smith and Mr. Tandon continue as the directors and officers of the Debtor.  Mr. Smith and Mr. Tandon will continue in their roles as officers following the confirmation of a plan of reorganization.  Mr. Smith and Mr. Tandon each earn an annual salary of $130,000.00.  Mr. Tandon's wife, Geetika Tandon, has been working for the Debtor on a part-time, volunteer basis since April 2024, and beginning July 15, 2025, she was employed and is paid $1,000.00 per month for her services.  Maxwell Casey, son of Kevin Casey, has been employed for over three years and is paid a salary of $59,850.00 per year.

After filing, the Debtor has focused on stabilizing its operations and growing its business.  In addition, in the last year, the Debtor has eliminated two employees, reduced monthly overhead by moving to a shared workspace, reduced monthly operating expenses, including license fees and subscriptions, increased retention of critical hosting clients, identified and corrected invoicing errors, and implemented a new invoicing plan to maximize monthly cash flow.

## C.  Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claims would receive in a Chapter 7 liquidation.  A liquidation analysis is attached to the Plan as Exhibit A.

As indicated in Exhibit A, the Debtor has completed a preliminary review of prepetition transactions.  The Debtor believes that there are no avoidable preferential transfers within the 90 days prior to the Petition Date, as described above.  The Debtor believes there are no other avoidable transfers under sections 544 or 548 of the Code.  Nonetheless, if you

received a payment from the Debtor within 90 days of the Petition Date, or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer.

**D. Ability to Make Future Plan Payments and Operate without Further Reorganization**

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business. The Debtor has provided projected financial information as Exhibit B.

The Debtor's financial projections show the Debtor's projected disposable income (as defined by section 1191(d) of the Code) for the three-year period set forth in Exhibit B, pursuant to section 1191(c)(2) of the Code.

The Debtor has provided projected cash on the Effective Date as Exhibit C. As set forth in Exhibit C, the Debtor will have sufficient cash to make all payments that are required to be made on the Effective Date (or when claims required to be paid on the Effective Date are allowed).

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**E. Disclaimer**

There is no disclosure statement procedure in a Subchapter V case, and therefore the Court has not approved this document as containing adequate information to enable parties to make informed judgments about its terms and how to vote on the Plan. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court will set a hearing on confirmation does not constitute an endorsement of the Plan. There has been no approval of this document by the Court as of the date it was filed.

**F. Tax Consequences of Plan**

Creditors concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys and/or advisors. The Debtor has not engaged in any analysis of possible tax consequences of the Plan and does not provide any advice related to those possible tax consequences.

## Article 1:   Summary

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code proposes to pay creditors of the Debtor from cash flow from future income.

This Plan provides for:        1 class of priority claims;

> 1 class of secured claims;
> 1 class of unsecured claims;
> 1 class of subordinated claims; and
> 1 class of interests.

Non-priority unsecured creditors holding allowed claims will receive distributions which the Debtor estimates to be between 11.7 and 16.1 cents on the dollar.  This Plan also provides for the payment in full of all administrative and priority claims.

All creditors should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claims.

## Article 2:   Classification of Claims

2.01   **Class 1**   Allowed **claims entitled to priority** under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

2.02   **Class 2**   The claim of **SBA** to the extent allowed as a secured claim under § 506 of the Code.

2.03   **Class 3**   All non-priority unsecured claims allowed under §502 of the Code.

2.04   **Class 4**   The allowed claims, if any, of Kevin Casey and Anna Day, which are subordinated to the claims of general unsecured creditors under § 510 of the Code.

2.05   **Class 5**   The shareholder interests in the Debtor.

## Article 3:   Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

3.01   **Unclassified claims**   Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02   **Administrative expense claims**   Each holder of an administrative expense claim allowed under §503 of the Code will be paid in full on the later of the Effective Date of this Plan or the date on which the claim is allowed by a final, non-

|  |  |
|---|---|
|  | appealable order, or upon other terms as may be agreed upon by the holder of the claim and the Debtor. |
|  | Administrative expenses arising in the ordinary course of business after the Petition Date shall be paid by the Debtor according to the terms of the obligation. All other Administrative Expenses shall be paid from the cash on hand, or the retainer held by the attorneys for the Debtor. |
| **Estimated Amount Owed:** $102,123.00 (estimate) | Applications for administrative expense priority claims must be filed no later than 60 days after the Effective Date |
|  | The Debtor estimates that administrative expenses, including attorney fees ($104,000.00 less $15,377.00 held in trust), the fees of the Trustee ($7,500.00), and accounting fees ($6,000.00) totaling approximately $102,123.00 will be paid on the Effective Date, or as otherwise agreed upon by the holder of the claim and the Debtor. |
| 3.03 **Priority tax claims** $0.00 (estimate) | Each holder of a priority tax claim will be paid in accordance with § 1129(a)(9)(C) of the Code.  Each holder will receive payment in full of the total value of its claim, with interest at the applicable governmental rate, split into equal monthly payments starting with the first day of the first full month following confirmation and ending on the date that is 5 years from the petition date. The final payments on these claims will be for the remaining balance owed on the respective claims with interest.  There will be no penalty for the pre-payment of priority tax claims. |
|  | The Debtor estimates priority tax claims to be paid pursuant to this section to be $0.00.  No priority tax claims have been filed, and the Debtor does not anticipate any claims to be filed.  The claim deadline for governmental units expired on May 14, 2025.  If a priority tax claim is subsequently allowed by the Court, the claim will be paid as provided above, and such payments will reduce the amounts payable to non-priority unsecured creditors. |
| 3.04 **Statutory fees** | There are no statutory fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan. |
| 3.05 **Prospective quarterly fees** | As a Subchapter V debtor, there are currently no quarterly fees required to be paid under 28 U.S.C. 1930(a)(6) or (a)(7).  If these fees are subsequently reimposed, the fees will accrue and be paid |

timely until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.

## Article 4:   Treatment of Claims Under the Plan

4.01   **Claims will be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1<br><br>**Priority Claims** excluding those in Article 3 | Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 priority claim will be paid in full, in cash, upon the later of the Effective Date of this Plan, or the date on which the claim is allowed by a final non-appealable order.<br><br>The Debtor estimates there are no claims in Class 1. |
| Class 2<br><br>**Secured Claim of SBA** | Impaired | The secured claim of SBA, see, proof of claim ("POC") No. 8, will be valued under this Plan at $156,845.03 and paid in full with interest at 9.0% per annum in 120 equal monthly installments of $1,986.85.  Payments will commence on the first day of the month following the month in which the Effective Date occurs.  Any balance of POC No. 8 in excess of the secured claim in this class will be treated as an unsecured claim and paid pursuant to Class 3, below.  SBA will retain its blanket lien on substantially all assets of the Debtor to secure its allowed secured claim under this Plan.  There will be no penalty for pre-payment of SBA's secured claim. |
| Class 3<br><br>**Non-Priority Unsecured Claims** | Impaired | Holders of all allowed claims not entitled to priority and not included in Classes 2 or 4 shall be deemed to have Allowed Unsecured Claims in this Class 3 and will be paid the projected disposable income of the Debtor, after the payment of Class 2 above, over three years as set forth on Exhibit B in the total amount of $241,310.00, in semi-annual disbursements.  Disbursements will be made in June and December each year; provided, however, that the first disbursement may be pro-rated to match the number of months between the Effective Date and the month in which the disbursement occurs.  The Debtor estimates that these disbursements will total between approximately 11.7% and 16.1% of Allowed |

| | | Unsecured Claims in this class, depending on the outcome of the Casey/Day Litigation, defined below, and excluding any proceeds from the Casey/Day Litigation.

In addition, Class 3 claimants will be paid the net proceeds, of the Casey/Day Litigation, as defined in Class 5 below.  The net proceeds will be paid to Class 3 claimants within sixty (60) days after receipt by the Debtor. |
|---|---|---|
| **Class 4**

**Subordinated Unsecured Claims** | Impaired | No later than 60 days after the Effective Date, the Debtor will file an adversary proceeding complaint against two shareholders and former employees of the Debtor, Kevin Casey and Anna Day (the "Casey/Day Litigation"). Through the Casey/Day Litigation, the Debtor (a) objects to the claims filed by Mr. Casey and Ms. Day (POC's 2, 3, 4 and 6); (b) seeks to subordinate the claims and interests of Mr. Casey and Ms. Day under principles of equitable subordination; and (c) seeks to recover on certain claims against Mr. Casey and Ms. Day, among other relief.  Mr. Casey and Ms. Day shall receive no distribution under the Plan unless and until their claims are allowed in the Casey/Day Litigation.  The Debtor shall reserve disbursements that would otherwise be paid on these claims such that, in the event the claims are allowed, there will be sufficient funds to pay the claims as part of Class 3 above.  In the event the Casey/Day claims are disallowed in the Casey/Day Litigation, the reserved funds shall be disbursed to Class 3 allowed claims as part of the next semi-annual disbursement. |
| **Class 5**

**Shareholder Interests** | Impaired | All shareholders will retain the value of their shares.  Mr. Smith and Mr. Tandon will retain their interests in the Debtor.  Under principles of equitable subordination, the Debtor will acquire the interests of Mr. Casey and Ms. Day by paying to each shareholder the difference between (a) the value of that shareholder's shares as determined by a professional valuation analyst or as agreed to by the parties minus (b) the amount of any judgment obtained against that shareholder in the Casey/Day Litigation or the amount of liability agreed to by the parties.  Any payments due under this Class 5 will be made over 60 months in quarter annual installments |

beginning in the quarter following the completion of payments to Class 3 creditors above.  In the event the Debtor collects on any judgment in excess of the value of shares, i.e., (b) above exceeds (a) above, the excess will be distributed to Class 3 creditors.

## Article 5:  Allowance and Disallowance of Claims

5.01  **Disputed claim**

A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

(i)  a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii)  no proof of claim has been filed, and the Debtor has scheduled the claim as disputed, contingent, or unliquidated.

5.02  **Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03  **Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.04  **Objections to claims**

Objections to claims must be filed no later than 60 days after the Effective Date.

## Article 6:  Provisions for Executory Contracts and Unexpired Leases

6.01 **Assumed executory contracts and unexpired leases**

(a) Unless specifically rejected by an Order of the Court, the Debtor assumes all the executory contracts and unexpired leases listed in its Schedule G filed in this case, as of the Effective Date.

(b) Except for executory contracts and unexpired leases that have been assumed before the Effective Date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the Effective Date.

## Article 7:    Implementation and Distributions

7.01 **Implementation**

Payments to be made under this Plan will be made from the funds of the Debtor existing on the Effective Date, as well as funds generated subsequent to the Effective Date from the Debtor's operations.    Funds may also be available from the Debtor's pursuit of any avoidance actions available to it under Chapter 5 of the Bankruptcy Code, should the Debtor choose to pursue any such claims.

Pursuant to section 1194(b) of the Code, the Debtor shall be the disbursing agent for all payments made to Class 2 under the Plan.

7.02 **Subchapter V Trustee Provisions**

If the Plan is confirmed on a consensual basis under section 1191(a) of the Code, then the Debtor shall be the disbursing agent for Class 3 under the plan, and the Trustee's services will be terminated on the date that the Plan is substantially consummated, pursuant to section 1183(c) of the Code.

If the Plan is confirmed on a nonconsensual basis under section 1191(b) of the Code, then the Trustee shall be the disbursing agent for Classes 3 and 4 under the Plan, and the Trustee's services shall be terminated after the final distribution under the Plan.

The Trustee will continue to be compensated for his services under section 330 of the Code.    The Trustee will file fee applications with the Court at least once a year but not more frequently than every 120 days.    The Debtor will remit payment

within 30 days after approval of any fee application, or at such other time as agreed to by the Trustee and the Debtor.

| | |
|---|---|
| 7.03 **Distributions** | Subject to Bankruptcy Rule 9010, distributions will be sent to: |

    (i)     The address set forth on the proof of claim filed with the Court

    (ii)    If no proof of claim was filed, the address set forth in the Schedules, or

    (iii)   The address set forth in any written notice of change of address filed with the Court.

If any distribution is returned as undeliverable, the Debtor or the Trustee, as applicable, will file a notice with the Court indicating that the distribution was returned as undeliverable and requesting an updated address.  No further distributions to that claimant will be made until a notice is filed with the Court updating the claimant's address.  When the notice of new address is filed, all distributions owed to the claimant will be made without interest.  Claims for undeliverable distributions must be made within six months of the original distribution date.  After that date, the claimant will no longer be entitled to participate in distributions under the Plan, and the unclaimed distribution will be allocated *pro rata* to the remaining claimants.

Checks issued for distributions will be null and void if not negotiated within 90 days from the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the disbursing agent within 120 days of the date the distribution was sent.  If no request for reissuance is timely made, that distribution will be allocated pro rata to the remaining claimants.

Pursuant to Bankruptcy Rule 3010(b), the disbursing agent will not distribute to a creditor any payment less than $15.00.  Distribution will be made when accumulated funds total $15.00 or more.  Any remaining funds will be distributed with the final payment.

## Article 8:   Confirmation of the Plan

**8.01   Requirements for Confirmation of the Plan.**

The requirements for confirmation of the Plan are set forth in Sections 1126 and 1191 of the

Bankruptcy Code.

**8.02    Votes Necessary for a Class to Accept the Plan.**

Voting on the Plan is tallied by Class.  A class of Claims accepts the Plan if both of the following occur: (i) the holders of more than one-half (1/2) of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan, and (ii) the holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan.

**8.03    Confirmation of the Plan.**

If one or more impaired classes of Claims and Interests fails to accept the Plan under Section 1126 of the Code, and all of the applicable requirements of Section 1129(a) of the Code, other than Section 1129(a)(8) and (10), have been satisfied, the Debtor requests that the Court confirm the Plan pursuant to the provisions of Sections 1129(b) and 1191(b) of the Code.

**8.04    Projected Disposable Income.**

In the event that the Plan is confirmed on a non-consensual basis, 11 U.S.C. § 1191(c)(2) requires that the projected disposable income of the Debtor be committed to the Plan for a minimum of three years.  The Debtor has calculated that it will have $241,310.00 in projected disposable income over the course of three years, of which $241,310.00 will be paid to unsecured creditors.

## Article 9:    Default

In accordance with § 1191(C)(3)(B), the following provisions govern a default of payment under the Plan:

1. If the Debtor is the disbursing agent to any class of creditor and the Debtor fails to make a payment required under the Plan, any creditor or party in interest may send notice by certified or overnight mail to the Debtor, counsel for the Debtor, the Trustee, and the UST of the default in payment. The Debtor will have ten business days from its receipt of the notice to cure any default in it making plan payments.
2. If the Trustee is the disbursing agent to any class of creditor and the Debtor fails to make a payment to the Trustee required under the Plan, the Trustee may provide notice of default to the Debtor through its counsel via email, copying the UST. The Debtor will have ten business days from the date the Trustee sends the notice of default to the Debtor's counsel to cure any default in it making plan payments.
3. Upon expiration of any right of the Debtor to cure a payment default as set forth above plus three business days to allow for mail, if the Debtor does not cure the default, any creditor or party in interest may file a notice with the Court, serving all creditors and parties in interest, indicating that the Debtor is in default of its payment obligations under the Plan. The Debtor will not have any additional cure right unless the Court otherwise orders.

Thereafter any creditor or party in interest may move in the Bankruptcy Court (1) for the appointment of the Trustee to take control of the Debtor and the Debtor's assets; (2) conversion to Chapter 7; or (3) dismissal. If the case is dismissed, the rights of all creditors will be restored to proceed against the Debtor for the total amount of the debt owed, minus any payment received under the Plan and limited by any applicable discharge in the context of a consensual confirmation.

4. These default provisions control all defaults under payment in the Plan notwithstanding any pre-petition agreement of the Debtor with any creditor. Except as permitted under this Plan, no creditor will charge any late fee, cost, legal fee, or other amount upon an alleged default.

## Article 10:   Vesting

Under 11 U.S.C. § 1141(b), on Confirmation of the Plan, all property of the estate will revest in the Reorganized Debtor, except as otherwise provided in the Plan or the Confirmation Order.

Under 11 U.S.C. §1141(c), on Confirmation of the Plan, all property of the Debtor dealt with in the Plan, tangible and intangible, including, without limitation, licenses, furniture, fixtures, and equipment, will revert, free and clear of all Claims and Equitable Interests of the Debtor, except as otherwise provided in the Plan or the Confirmation Order.

## Article 11:   General Provisions

### 11.01   Definitions and rules of construction.

Certain terms are defined elsewhere in this Plan as indicated by parenthesis and quotations marks. The Definitions and rules of construction outlined in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

**Administrative Claimant:** Any person entitled to payment of an Administrative Expense.

**Administrative Expense:** Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Bankruptcy Code and allowed under Section 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor, allowances of compensation or reimbursement of expenses to the extend allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**Administrative Tax Claim:** Any tax incurred according to Section 503(b)(1)(B) of the Bankruptcy Code.

**Allowed Claim:** Except as otherwise specified in this Plan, any claim against the Debtor according to Section 502 of the Bankruptcy Code to the extent that: (a) the claim is scheduled in the Debtor's

schedules and is not listed as disputed, contingent or unliquidated, or (b) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by Final Order.

**Allowed Priority Claim:** An Allowed Claim entitled to priority under Section 507 (other than an Administrative Expense, Administrative Tax Claim, or an Allowed Priority Tax Claim) and not subject to subordination under Section 510 of the Bankruptcy Code and reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**Allowed Secured Claim:** Except as otherwise specified in this Plan, Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to set off) to the extent allowed as secured claims under Section 506 of the Bankruptcy Code.

**Allowed Unsecured Claim:** An Allowed Claim, that is not a Secured Claim and that is also not entitled to priority under Section 507 or subject to subordination under Section 510 of the Bankruptcy Code and reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

**Avoidance Action:** Any claim or cause of action arising under any Sections 544, 547 or 548 of the Bankruptcy Code such as fraudulent transfers, preference actions and the like.

**Bankruptcy Code or Code:** The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**Bankruptcy Court:** The United States Bankruptcy Court for the Southern District of Ohio.

**Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure.

**Bar Date:** The last day to file proofs of claim in this case is January 29, 2025, as set by the Bankruptcy Court, excluding claims filed by a governmental unit.

**Case or Bankruptcy Case:** The case in the Bankruptcy Court in which this Plan is filed *In re Dark Rhiino Security, Inc.,* Case No. 24-54658.

**Cash:** Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of American, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**Claim:** Any "right to payment from the Debtor whether or not such right is reduced to judgment liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or

unsecured." 11 U.S.C. § 101(5).

**Class:** A category of holders of claims or interests which are set forth in this Plan.

**Confirmation:** The entry by the Bankruptcy Court of an order confirming this Plan.

**Confirmation Date:** The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided, however, that if on motion of the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**Confirmation Order:** An order of the Bankruptcy Court or any amendment thereto confirming the Plan under the provisions of chapter 11 of the Bankruptcy Code.

**Creditor:** Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**Disposable Income:** Shall have that meaning ascribed to such term under Section 1191(d) of the Bankruptcy Code.

**Distributions:** The property required by the Plan to be distributed to the holders of Allowed Claims.

**Distribution Date:** The earliest date after receipt of the Cash payment that a Distribution may be made under the Plan to the holders of Allowed Claims in a particular Class in accordance with this Plan.

**Executory Contracts:** All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**Final Order:** An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified, or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**Insider:** Director of the Debtor, officer of the Debtor, person in control of the Debtor, partnership in which the Debtor is a general partner, general partner of the Debtor, or relative of a general partner, director, officer or person in control of the Debtor.  11 U.S.C. §101(31)(B).

**Petition Date:** November 15, 2024, the date the Chapter 11 petition for relief was filed.

**Plan:**  This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**Reorganized Debtor:** The Debtor after the Effective Date.

**Schedules:** Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing assets and liabilities.

**Trustee:**  Matthew Schaeffer, the Trustee appointed according to 11 U.S.C. §1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the Confirmation Order.

### 11.02   Effective Date.

The Effective Date of this Plan is the first business day that is seven days after the Confirmation Order becomes a Final Order.  If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the day after the date on which the stay expires or is otherwise terminated.  These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

### 11.03   Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 11.04   Binding effect.

The rights and obligations of any entity named or referred to in this Plan will be binding under and will inure to the benefit of the successors or assigns of such entity.

### 11.05   Captions.

The headings contained in this Plan are for convenience or reference only and do not affect the meaning or interpretation of this Plan.

### 11.06   Controlling effect.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Ohio govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

### 11.07   Retention of Jurisdiction.

The Court shall retain jurisdiction to the full extent necessary to administer this case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification.  Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by Title 28 of the United States Code.

## Article 12:   Discharge

If the Debtor's Plan is confirmed on a consensual basis under Section 1191(a) of the Code, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan to the extent specified in Section 1141(d)(1)(A) of the Code, except that the Debtor will not be discharge of any debt: (i) imposed by this Plan; or (ii) to the extent provided in Section 1141(d)(6) of the Code.

If the Debtor's Plan is confirmed on a nonconsensual basis under Section 1191(b) of the Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the 5 years of this Plan, or as otherwise provided in Section 1192 of the Code.  The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or otherwise as provided in Section 1192 of the Code; or (ii) excepted from discharge under Section 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.


Respectfully submitted,

Dark Rhiino Security, Inc.

Dated: September 30, 2025          /s/ Manoj Tandon
                                   By: Manoj Tandon, CEO


 /s/ John W. Kennedy
Myron N. Terlecky (0018628)
John W. Kennedy (0042672)
Strip, Hoppers, Leithart, McGrath & Terlecky Co., LPA
575 South Third Street
Columbus, Ohio 43215-5759
Telephone: (614) 228-6345
Facsimile: (614) 228-6369
Email: mnt@columbuslawyer.net
          jwk@columbuslawyer.net
Attorneys for Debtor and Debtor-in-Possession

**EXHIBIT A**
**LIQUIDATION ANALYSIS**

| Description | Real Prop. | Personal Prop. | Total |
|---|---|---|---|
| Property Value[1] | $0.00 | $174,899.03 | $174,899.03 |
| Less: | | | |
| Secured Claims[2] | $0.00 | ($156,845.03) | ($156,845.03) |
| Interest in Unencumbered Property | $0.00 | $18,054.00 | $18,054.00 |
| Plus: | | | |
| Chapter 5 recoveries (estim.) | | | $0.00 |
| Less: | | | |
| Schedule E Priority Claims | | | ($0.00) |
| Chapter 11 Attorney and Trustee Fees and Expenses (estim.) | | | ($20,000.00) |
| Chapter 7 Trustee Statutory Commission | | | ($2,555.40) |
| Chapter 7 Attorney Fees and Expenses (estim.) | | | ($1,000.00) |
| Available to General Unsecured | | | $0.00 |
| Total General Unsecured Claims[3] | | | $2,085,258.20 |
| **Percent Distribution** | | | **0.00%** |

---

[1] Property values from the Debtor's Schedule A/B.
[2] Calculated as the value of personal property subject to valid liens.
[3] Based on claims as scheduled including unsecured portions of claims on the Debtor's Schedule D.

1

**Exhibit B Cash Flow Projections**

| | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Year 1 | Year 2 | Year 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | | |
| General Income | $ 113,805 | $ 115,387 | $ 128,578 | $ 176,875 | $ 52,115 | $ 47,766 | $ 133,989 | $ 204,669 | $ 65,867 | $ 203,183 | $ 281,523 | $ 57,892 | $ 1,581,649 | $ 1,624,504 | $ 1,705,729 |
| Total Income | $ 113,805 | $ 115,387 | $ 128,578 | $ 176,875 | $ 52,115 | $ 47,766 | $ 133,989 | $ 204,669 | $ 65,867 | $ 203,183 | $ 281,523 | $ 57,892 | $ 1,581,649 | $ 1,624,504 | $ 1,705,729 |
| | | | | | | | | | | | | | | $ - | $ - |
| **Expense** | | | | | | | | | | | | | | | |
| Employee Gross Payroll | $ 67,700 | $ 67,700 | $ 67,700 | $ 67,700 | $ 67,700 | $ 67,700 | $ 67,700 | $ 67,700 | $ 77,700 | $ 67,700 | $ 67,700 | $ 67,700 | $ 822,400 | $ 863,020 | $ 906,171 |
| Contract Labor | $ 11,500 | $ 11,500 | $ 11,500 | $ 11,500 | $ 11,500 | $ 11,500 | $ 11,500 | $ 11,500 | $ 11,500 | $ 11,500 | $ 11,500 | $ 11,500 | $ 138,000 | $ 142,140 | $ 149,247 |
| Total Payroll | $ 79,200 | $ 79,200 | $ 79,200 | $ 79,200 | $ 79,200 | $ 79,200 | $ 79,200 | $ 79,200 | $ 89,200 | $ 79,200 | $ 79,200 | $ 79,200 | $ 960,400 | $ 1,005,160 | $ 1,055,418 |
| | | | | | | | | | | | | | | $ - | $ - |
| Health Insurance | $ 1,727 | $ 1,727 | $ 1,727 | $ 1,727 | $ 1,727 | $ 1,727 | $ 1,727 | $ 1,993 | $ 1,993 | $ 2,159 | $ 2,159 | $ 2,159 | $ 22,552 | $ 23,229 | $ 24,390 |
| Life/AD&D/Dental/Vision | $ 225 | $ 225 | $ 225 | $ 225 | $ 225 | $ 225 | $ 225 | $ 225 | $ 225 | $ 225 | $ 225 | $ 225 | $ 2,700 | $ 2,781 | $ 2,920 |
| BWC | $ 45 | $ 45 | $ 45 | $ 45 | $ 45 | $ 45 | $ 45 | $ 45 | $ 45 | $ 45 | $ 45 | $ 45 | $ 540 | $ 556 | $ 584 |
| Business Insurance | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 8,652 | $ 8,912 | $ 9,357 |
| Total Insurance | $ 2,718 | $ 2,718 | $ 2,718 | $ 2,718 | $ 2,718 | $ 2,718 | $ 2,718 | $ 2,984 | $ 2,984 | $ 3,150 | $ 3,150 | $ 3,150 | $ 34,444 | $ 35,477 | $ 37,251 |
| | | | | | | | | | | | | | | $ - | $ - |
| Hosting Services Expenses | $ 3,931 | $ 3,931 | $ 3,931 | $ 3,931 | $ 3,931 | $ 3,931 | $ 3,931 | $ 3,931 | $ 3,931 | $ 3,931 | $ 3,931 | $ 3,931 | $ 47,172 | $ 48,587 | $ 51,017 |
| | | | | | | | | | | | | | | $ - | $ - |
| Security OEM Expenses | $ 19,243 | $ 19,243 | $ 19,243 | $ 19,243 | $ 19,243 | $ 19,243 | $ 19,243 | $ 19,243 | $ 19,243 | $ 20,335 | $ 20,335 | $ 20,335 | $ 234,192 | $ 241,218 | $ 253,279 |
| | | | | | | | | | | | | | | $ - | $ - |
| Bank Fees | $ 400 | $ 400 | $ 400 | $ 400 | $ 400 | $ 400 | $ 400 | $ 400 | $ 400 | $ 400 | $ 400 | $ 400 | $ 4,800 | $ 4,944 | $ 5,191 |
| Payroll Processing | $ 385 | $ 385 | $ 385 | $ 385 | $ 385 | $ 385 | $ 385 | $ 385 | $ 385 | $ 385 | $ 385 | $ 385 | $ 4,620 | $ 4,759 | $ 4,997 |
| 401(k) Administrator | $ 133 | $ 133 | $ 133 | $ 133 | $ 133 | $ 133 | $ 133 | $ 133 | $ 133 | $ 133 | $ 133 | $ 133 | $ 1,596 | $ 1,644 | $ 1,726 |
| SOC2 Audit | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 12,000 | $ 12,360 | $ 12,978 |
| Total Finance | $ 1,918 | $ 1,918 | $ 1,918 | $ 1,918 | $ 1,918 | $ 1,918 | $ 1,918 | $ 1,918 | $ 1,918 | $ 1,918 | $ 1,918 | $ 1,918 | $ 23,016 | $ 23,706 | $ 24,892 |
| | | | | | | | | | | | | | | $ - | $ - |
| Rent | $ 998 | $ 998 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 16,996 | $ 17,506 | $ 18,381 |
| Internet | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 6,000 | $ 6,180 | $ 6,489 |
| Telephone | $ 354 | $ 354 | $ 354 | $ 354 | $ 354 | $ 354 | $ 354 | $ 354 | $ 354 | $ 354 | $ 354 | $ 354 | $ 4,248 | $ 4,375 | $ 4,594 |
| Total Facilities | $ 1,852 | $ 1,852 | $ 2,354 | $ 2,354 | $ 2,354 | $ 2,354 | $ 2,354 | $ 2,354 | $ 2,354 | $ 2,354 | $ 2,354 | $ 2,354 | $ 27,244 | $ 28,061 | $ 29,464 |
| | | | | | | | | | | | | | | $ - | $ - |
| Events | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 12,000 | $ 12,360 | $ 12,978 |
| Marketing Platforms | $ 1,600 | $ 2,100 | $ 2,100 | $ 2,100 | $ 2,100 | $ 2,100 | $ 2,100 | $ 2,100 | $ 2,100 | $ 2,100 | $ 2,100 | $ 9,300 | $ 31,900 | $ 32,857 | $ 34,500 |
| Travel | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 14,400 | $ 14,832 | $ 15,574 |
| Total Sales & Marketing | $ 3,800 | $ 4,300 | $ 4,300 | $ 4,300 | $ 4,300 | $ 4,300 | $ 4,300 | $ 4,300 | $ 4,300 | $ 4,300 | $ 4,300 | $ 11,500 | $ 58,300 | $ 60,049 | $ 63,051 |
| | | | | | | | | | | | | | | $ - | $ - |
| Income Tax | $ 1,199 | $ 1,199 | $ 1,199 | $ 1,199 | $ 1,199 | $ 1,199 | $ 1,199 | $ 1,199 | $ 1,199 | $ 1,469 | $ 1,469 | $ 1,469 | $ 15,198 | $ 15,654 | $ 16,437 |
| CAT Tax | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 3,000 | $ 3,090 | $ 3,245 |
| Total Taxes | $ 1,449 | $ 1,449 | $ 1,449 | $ 1,449 | $ 1,449 | $ 1,449 | $ 1,449 | $ 1,449 | $ 1,449 | $ 1,719 | $ 1,719 | $ 1,719 | $ 18,198 | $ 18,744 | $ 19,681 |
| | | | | | | | | | | | | | | $ - | $ - |
| Total Expense | $ 114,111 | $ 114,611 | $ 115,113 | $ 115,113 | $ 115,113 | $ 115,113 | $ 115,113 | $ 115,379 | $ 125,379 | $ 116,907 | $ 116,907 | $ 124,107 | $ 1,402,966 | $ 1,461,003 | $ 1,534,053 |
| | | | | | | | | | | | | | | $ - | $ - |
| Total Net Income | $ (306) | $ 776 | $ 13,465 | $ 61,762 | $ (62,998) | $ (67,347) | $ 18,876 | $ 89,290 | $ (59,512) | $ 86,276 | $ 164,616 | $ (66,215) | $ 178,683 | $ 163,501 | $ 171,676 |
| | | | | | | | | | | | | | | $ - | $ - |
| **Chapter 11 & Prof** | | | | | | | | | | | | | | | |
| SBA Secured | $ 1,987 | $ 1,987 | $ 1,987 | $ 1,987 | $ 1,987 | $ 1,987 | $ 1,987 | $ 1,987 | $ 1,987 | $ 1,987 | $ 1,987 | $ 1,987 | $ 23,844 | $ 23,844 | $ 23,844 |
| Attorney Fees | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 30,000 | $ 30,900 | $ 32,445 |
| Accounting Fees | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 12,000 | $ 12,360 | $ 12,978 |
| Subchapter V Trustee Fees | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 6,000 | $ 6,180 | $ 6,489 |
| Business Consulting | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 19,200 | $ 19,776 | $ 20,765 |
| | | | | | | | | | | | | | | $ - | $ - |
| Net Income | $ (7,893) | $ (6,811) | $ 5,878 | $ 54,175 | $ (70,585) | $ (74,934) | $ 11,289 | $ 81,703 | $ (67,099) | $ 78,689 | $ 157,029 | $ (73,802) | $ 87,639 | $ 90,217 | $ 95,920 |

**Exhibit B**
**Dark Rhiino Security, Inc.**
**Projected Disposable Income**

| Plan Year | 1 | 2 | 3 | |
|---|---|---|---|---|
| Income | | | | |
| Beginning Cash Balance | $ 83,075 | $ 75,000 | $ 75,000 | |
| Income | $ 1,581,649 | $ 1,624,504 | $ 1,705,729 | |
| Operating Expenses | $ 1,402,966 | $ 1,461,003 | $ 1,534,053 | |
| | | | | |
| Net Operating Income (Loss) | $ 261,758 | $ 238,501 | $ 246,676 | |
| Secured Debt/Prof Fees | $ 91,044 | $ 93,060 | $ 96,521 | |
| Net Operating Income after Ch 11 Expenses | $ 170,714 | $ 145,441 | $ 150,155 | |
| Less Cash in Reserve | $ 75,000 | $ 75,000 | $ 75,000 | |
| Projected Disposable Income | $ 95,714 | $ 70,441 | $ 75,155 | |
| | | | | |
| Total Distribution to Class 3 | $ 95,714 | $ 70,441 | $ 75,155 | $ 241,310 |

**EXHIBIT C**
**EFFECTIVE DATE CASH**

**Description**

| | |
|---|---|
| Cash on Hand as of September 30, 2025 | $325,198.00 |
| Attorney Trust Account | $15,377.00 |
| **Total** | **$340,575.00** |
| Less: | |
| Estimated Subchapter V Trustee Fees | ($7,500.00) |
| Estimated Attorney Fees | ($104,000.00) |
| Estimated Accounting Fees | ($6,000.00) |
| Estimated Income Tax due October 15, 2025 | ($55,000.00) |
| Estimated VAT Tax | ($60,000.00) |
| Valuation Analyst Fees[1] | ($10,000.00) |
| Estimated Forensic Analyst Fees | ($15,000.00) |
| **Balance** | **$83,075.00** |

---

[1] The Debtor continues in its attempts to resolve the Casey/Day Litigation; however, if this litigation is necessary, the Debtor estimates these professional fees will be incurred at the outset of the litigation.  This does not include attorney fees associated with the litigation.

1